UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARY CLAIRE MCCOY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 19-1810** |
| **ISIDORE NEWMAN SCHOOL, ET AL** | **SECTION: "S" (5)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion to Exclude the Testimony of Plaintiff's Vocational Rehabilitation Expert, Nancy Favaloro** (Rec. Doc. 127), filed by Isidore Newman School ("Newman") is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion to Exclude the Testimony of Plaintiff's Economic Expert, John Theriot of Malcolm Dienes, L.L.C.** (Rec. Doc. 128) filed by Newman is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion to Exclude or Limit the Testimony of Plaintiff's Psychiatric Expert, Dr. Eileen Ryan** (Rec. Doc. 129) filed by Newman is **GRANTED in part**, and all impermissible factual findings, all references to RC's mental health and well-being, all superfluous references to the McCoy family's mental health and well-being, and medical conclusions made without a reasonable degree of medical certainty, are excluded;

**IT IS FURTHER ORDERED** that the **Motion to Exclude or Limit the Testimony of Dr. Ralph Litolff** (Rec. Doc. 131), filed by Mary Claire McCoy is **GRANTED in part**, and statements of law by Dr. Litolff are excluded;

**IT IS FURTHER ORDERED** that the **Motion to Exclude the Testimony of Plaintiff's Title IX Expert, Ms. Courtney Bullard** (Rec. Doc. 139) is **GRANTED in part**, and impermissible factual determinations and legal conclusions, and references to Title IX retaliation, are excluded.

## BACKGROUND

Detailed facts of this case have been set forth in prior orders of the court, and thus are not restated here. In the instant motions, the parties seek to exclude or limit the testimony of proposed expert witness, based on Daubert v. Merrell Dow Pharm., 509 U.S. 579, 589 (1993) and Federal Rule of Evidence 702.

## DISCUSSION

In Daubert, the Supreme Court of the United States held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." To perform its gatekeeping function, the court must first determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. See Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998). The reliability inquiry requires the court to assess whether the reasoning or methodology underlying the expert's testimony is valid. See Daubert, 509 U.S. at 592-93. The goal is to exclude expert testimony that is based merely on subjective belief or unsupported speculation. See id. at 590. An expert may rely upon otherwise inadmissible facts and data, including hearsay, if " 'experts in the particular field would reasonably rely on such evidence.' " Daubert, 509 U.S. at 595 (quoting former FED. R.

EVID. 702). However, "as a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 562 (5th Cir. 2004) (quoting United States v. 14.38 Acres of Land, 80 F.3d 1074, 1077 (5th Cir. 1996)). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system: 'Vigorous cross-examination [and] presentation of contrary evidence ... are the traditional and appropriate means of attacking shaky but admissible evidence." Id. at 1078, citing Daubert, 509 U.S. at 596.

I.  **Newman's motions to exclude Favolaro, Theriot, and Ryan**

Plaintiff seeks damages in the form of past, present, and future emotional pain and suffering; depression, anxiety, mental anguish, and emotional trauma; past, present, and future medical expenses and healthcare charges; future wage loss and/or diminution of earning capacity due to the damage to reputation and projected long-term effects of the depression, anxiety, mental anguish, and emotional trauma; and loss of enjoyment of life. In support of her claims, plaintiff seeks to introduce testimony of Nancy Favolaro, a vocational rehabilitation expert, John Theriot, an economic expert, and Dr. Eileen Ryan, a psychiatric expert.

A.  *Favaloro's Report*

Favaloro's report assesses the vocational rehabilitation and future employability of plaintiff, and provides a cost estimate for the medical services that plaintiff's medical expert opines will be required. In drafting her report, Favaloro interviewed plaintiff, and reviewed plaintiff's Newman school records, the records of plaintiff's treating mental health practitioners

and physicians, and plaintiff's psychiatric expert, Dr. Ryan. Favaloro concludes that plaintiff may be better suited to lower-skilled, lower-stress jobs, such as a bank teller, receptionist, and similar.

Newman does not challenge Favaloro's credentials. Newman challenges her opinion arguing that it is inconsistent with record evidence, including plaintiff's deposition testimony that she has worked part time while successfully completing her undergraduate degree[1] and intends to pursue an advanced degree. Newman also argues that Favaloro's report is unreliable because it incorrectly cites the United States Bureau of Labor statistics for the median hourly wages of the jobs for which she determined plaintiff is suited.

In response, plaintiff maintains that Favaloro's opinion, which suggests that plaintiff's current situation is not predictive of her future prospects, is not inconsistent with record evidence, or speculative. Plaintiff argues that school is a sheltered environment, and that Favaloro relied not only on plaintiff's current situation and stated plans, but also on medical evidence. Accordingly, plaintiff contends that Favaloro's opinion is not speculative or unsupported.

Essentially, Newman's position is that Favaloro should have relied solely on plaintiff's situation as a college student to predict her future earnings, and disregarded inconsistent medical or other evidence. This is a challenge to the bases for Favaloro's opinion. However, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." Primrose

---

[1] Favaloro's report was drafted prior to May 2022, when plaintiff was scheduled to graduate from college.

Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 562 (5th Cir. 2004) (quoting United States v. 14.38 Acres of Land, 80 F.3d 1074, 1077 (5th Cir. 1996)). It may be challenged through cross-examination.

With respect to the contention that Favaloro incorrectly cites Bureau of Labor statistics, Newman acknowledges that while Favaloro's report purports to include the "median" average wage for certain post-injury jobs, she actually cited the "mean" hourly wage in the Atlanta, Georgia area for those positions. This oversight is easily corrected.

The motion to exclude Nancy Favaloro is denied.

### B. John Theriot's Report

John Theriot of Malcolm Dienes, L.L.C., authored an expert report quantifying plaintiff's alleged economic damages, including her alleged loss of earnings and the cost of the life care plan prepared by Favaloro, plaintiff's vocational rehabilitation expert. Newman does not challenge Theriot's credentials, but contends that Theriot's expert opinion is based on unreliable methodology, because he ignores accepted accounting practices and fails to verify basic assumptions. Specifically, Newman argues that Theriot's report is unreliable because it accepted the assumptions included in Favaloro's report without independently investigating them, and extrapolated from them in performing his own calculations of plaintiff's economic damages. Newman emphasizes that the American Institute of Certified Public Accountants ("AICPA"), of which Theriot is member, states in its AICPA Manual on Litigation Services and Applicable Professional Standards that: "The expert needs to base his or her conclusions and judgments on

5

sufficient relevant data."[2] While Newman acknowledges that the manual contemplates that an expert may form an opinion based on an assumption, it claims that Theriot's reliance on Favaloro's opinion deviates from accepted accounting principles because Favaloro's opinion was unreliable for the reasons discussed above in section I(A).

This is a challenge to the bases of Theriot's opinion – specifically, Favaloro's opinion. The court has determined that Favaloro's report is admissible. Further, Theriot's reliance on the Favaloro report is not misplaced because it contains information "reasonably relied on by experts in his field." See FED. R. EVID. 703. Moreover, the assumptions incorporated by Theriot are within Favaloro's expertise, not Theriot's. As an economic expert, Theriot cannot be expected to opine on plaintiff's vocational rehabilitation; he has no choice but to rely on the expertise of a vocational rehabilitation specialist to establish benchmarks upon which to base a calculation.

To the extent that Newman believes the assumptions relied upon in his calculations are unsupported, Newman may highlight that on cross-examination. On cross-examination, Newman may also request that Theriot perform an alternative calculation based on a different assumption. It will be the jury's task to determine which assumptions and calculations to credit.

The motion to exclude John Theriot is denied.

### C.  Dr. Eileen Ryan's Report

Dr. Eileen Ryan is plaintiff's psychiatric expert. Dr. Ryan is an expert on child and adolescent psychiatry. Plaintiff proposes to have her testify about Mary Claire's past, present, and future psychological pain, suffering, and impairment that she allegedly suffered as a result of

---

[2] Rec. Doc. 128-6, 5 at no. 24.

Newman's actions and inactions, as well as her future treatment. Newman does not challenge Dr. Ryan's qualifications or competency to testify as an expert. Rather, Newman argues that the expert opinion of Dr. Ryan should be excluded or limited because she opines on irrelevant matters (including the mental health of plaintiff's family and close friend, RC), her opinions rely on an outdated chart, her report improperly conflates the trauma caused by RM with the alleged trauma caused by Newman, and it is unsupported because she did not consider Mary Claire's pre-existing symptoms. Newman also objects that Dr. Ryan's conclusions that plaintiff will never recover from PTSD, will require lifelong treatment, has a continuing risk of work-related difficulties, and has symptoms consistent with Obsessive Compulsive Disorder, are speculative and therefore inadmissible.

Plaintiff has responded that her family's mental health is relevant medical history, because it suggests that Newman's actions, not an inherited predisposition, caused her damages. Plaintiff argues that the objected-to chart was not relied upon by Dr. Ryan to reach her opinion, but is merely illustrative, and that Newman has not pointed to any evidence that the findings contained in the chart are no longer valid. Plaintiff further argues that Dr. Ryan did not improperly conflate the initial assault and the subsequent harassment as the underlying trauma that caused Mary Claire's PTSD, and that her opinions are not speculative simply because they do not emphasize certain doctors' records as much as Newman believes they should. Plaintiff also contends that Dr. Ryan's opinion that Mary Claire will require lifelong PTSD treatment is not unsupported just because it differs from that of Mary Claire's treating physicians, and the fact that Mary Claire has had success in college and part-time work does not undermine the fact that

Dr. Ryan, in her expertise, identified a continuing risk of work-related difficulties.

At the outset, the court observes that Dr. Ryan's report includes a lengthy recitation of the underlying facts of the case. While it is true that expert opinion testimony is not objectionable just because it embraces an ultimate issue, see Fed. R. Evid. 704(a), the factual findings set forth by Dr. Ryan, including eleven pages of "collateral interviews", in which contested facts are set out as established truths, is not permitted. To do so would undermine the role of the jury as fact-finder, and provoke juror confusion if and when these ostensibly settled facts are inconsistent with the evidence jurors take in themselves at trial. Accordingly, the detailed factual narrative must be redacted from the report if it will be submitted to the jury. If facts are necessary to contextualize an opinion, they should be couched in hypothetical form, e.g., "assuming that the facts are thus and so, it is my opinion that...." Trial testimony must be similarly presented.

Portions of Dr. Ryan's report also suffer from a lack of relevance. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. The mental health of Mary Claire's friend, RC, has no relevance to any fact in issue in this case. Mary Claire's immediate family's mental health has limited relevance. Nevertheless, Dr. Ryan's report includes numerous references to both throughout the family history and collateral interviews sections.

With respect to RC, all such references are excluded. With respect to Mary Claire's immediate family, a brief statement regarding their mental health status, in the vein of the statement regarding Mary Claire's extended family that "There is no other history of mental

illness in the maternal or paternal extended families,"[3] is sufficient. Narratives by family members regarding other family members – for example, Mary Claire's father's statement that he "expressed regret and worries that we 'neglected [Mary Claire's brother]. We tried our best to be there for him,' but wishes that he and his wife had 'insisted that [Mary Claire's brother] get therapy' "[4] – are simply not relevant. All such references must be redacted from the report and such testimony will not be allowed at trial.

Also problematic is Dr. Ryan's statement in the section of her report captioned "Prognosis, Permanency, and Related Health Risks", that "[i]n my opinion, continued risks for Mary Claire include alcohol use . . . continued work-related difficulties secondary to PTSD and depression, including irritability, anger, and avoidance; continued impairment in her relationships with friends and family; and continued problems with intimacy."[5] Unlike Dr. Ryan's other prognoses in this section, it is not prefaced as being her opinion "to a reasonable degree of medical certainty." Rather, the items listed are things that might happen to Mary Claire, but they are not probable, much less a medical certainty.

"Numerous district courts in the Fifth Circuit have excluded testimony relating to future medical needs when 'the evidence establishes [that] it is only treatment the plaintiff *might* need, rather than treatment the plaintiff will *probably* need.' " Green v. Mercury Ins. Co., 2021 WL 1647715, at *5 (E.D. La. Apr. 27, 2021) (quoting Brandner v. State Farm Mut. Auto. Ins. Co.,

---

[3] Rec. Doc. 129-2, 9.

[4] Rec. Doc. 129-2, 20.

[5] Rec. Doc. 129-2, 33.

2019 WL 636423, at *3 (E.D. La. Feb. 14, 2019) (citing cases) (emphasis in original). While the challenged opinion is more in the nature of a prognosis than a definitive recommendation for future treatment, because the quoted statement merely recites potential risks, not probable outcomes, it is excluded because of its potential to confuse the jury, and because the opinion is made without a reasonable degree of medical certainty.

The same holds true with respect to Dr. Ryan's statement that Mary Claire "has experienced symptomatology compatible with Obsessive Compulsive Disorder (OCD) given persistent thoughts and images that are experienced as intrusive and unwanted; however, her PTSD symptomatology . . . makes it difficult to differentiate OCD from PTSD. Trauma is associated with an increased risk for developing OCD.[6] This equivocal statement, which includes no indicia of medical certainty, is likely to confuse the jury, and is excluded.

All of Newman's remaining issues go to the bases for Dr. Ryan's opinions. In our adversarial system, these are material for cross-examination, not a basis for exclusion.

### III. Plaintiff's Motion to Exclude or Limit the Testimony of Dr. Ralph Litolff

Dr. Ralph Litolff is an economic expert proposed by Newman. Plaintiff seeks to exclude his opinion arguing that his report impermissibly includes an explanation of legal standards. Newman counters that the report merely references legal principles without rendering an opinion on them, and thus he does not invade the province of the court or jury.

The court's review of the report reflects that it contains a section setting out the legal standard for proving economic damages, and paragraphs captioned "Proximate Cause" and

---

[6] Rec. Doc. 129-2, 31.

"Reasonable Certainty", setting out Dr. Litolff's understanding of the law on these topics, and legal conclusions flowing therefrom on pages seven and eight (e.g., "Any economic damages that are dependent on speculative, unexplained, and/or unsupported assumptions should be disregarded.").

" 'Each courtroom comes equipped with a "legal expert," called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.' " Lamar Advert. Co. v. Zurich Am. Ins. Co., 533 F. Supp. 3d 332, 341 (M.D. La. 2021) (quoting Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1213 (D.C. Cir. 1997)). Because judges, not expert witnesses, charge the jury on the law, expert testimony concerning legal standards is generally inadmissible as unhelpful to the jury. See FED. R. EVID. 702(a). Accordingly, Dr. Litolff's formulations of the law are inadmissible. However, this does not provide a basis for the wholesale exclusion of Dr. Litolff. Newman is clearly entitled to call its own economic expert to rebut the plaintiff's expert. Accordingly, the legal formulations set forth in Dr. Litolff's report must be redacted and if he testifies, his testimony must be adapted accordingly.

**IV.    Newman's Motion to Exclude the Testimony of Plaintiff's Title IX Expert, Ms. Courtney Bullard**

Plaintiff seeks to introduce testimony of its Title IX compliance expert, Courtney Bullard. In her report, Bullard opines on the legal standards of Title IX and Newman's compliance with them. Bullard also opines on the environment and culture at Newman prior to plaintiff's report of sexual assault. Bullard concludes that Newman retaliated against plaintiff.

Newman argues that Bullard's expert testimony should be excluded because she invades

the province of the jury by making factual findings and credibility judgments, and the province of the court by instructing the jury on the applicable law. Newman further contends that Bullard's opinion is unhelpful and irrelevant to the extent she opines on events which are not at issue and merely tells the jury which conclusion to reach. In response, plaintiff contends that Bullard's opinion provides admissible testimony regarding industry standards and practice in connection with Title IX compliance.

The opinion section of Bullard's report begins with the following paragraph:

> It is my professional opinion that Newman was aware of a toxic culture against females and that it did not take appropriate measures, consistent with industry standard, to address it prior to the sexual assault of MCM. Newman also failed to comply with industry standards in its response to MCM's assault once on notice. This failed response included deviations from industry standard in providing MCM with notice of the outcome of the investigation and any disciplinary action taken. Finally, Newman was on notice of retaliatory and harassing behavior by Newman students as a result of Newman's investigation into the assault and failed to respond in accordance with industry standard.[7]

The report goes on to expand on each of the assertions contained in the above paragraph. As with Dr. Ryan's report, Bullard's report contains factual findings on the very issues the jury is tasked with resolving. The report must be redacted in the same manner set forth with respect to Dr. Ryan's report.

Bullard's report also contains categorical statements of the law, and includes her understanding of Supreme Court case law interpreting it, as well as legal conclusions.

With respect to Bullard's statements of the law, as previously discussed, it is the province of the court to instruct the jury on the law. See supra; see also, Askanase v. Fatjo, 130 F.3d 657,

---

[7] Rec. Doc. 139-2, 14.

673 (5th Cir. 1997) (citation omitted). It is the jury's role to determine whether that law was transgressed. Id. Testimony by Bullard that Title IX or other federal regulations require a certain action and that Newman did not perform it would usurp these roles. To that extent, Bullard's testimony is excluded. However, to the extent Bullard's report and testimony can be redacted and limited to explicating industry compliance standards and practices under Title IX, and what is generally expected within the industry under those standards, it may be admitted.

With respect to the legal conclusions offered by Bullard, while experts may offer their opinions on ultimate issues, they "may never render conclusions of law." Goodman v. Harris Cnty., 571 F.3d 388, 399 (5th Cir. 2009). "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983). Accordingly, all legal conclusions by Bullard are exluded and must be redacted.

The court declines to make a blanket ruling on the admissibility of testimony touching on events prior to the incidents at issue in this case outside of the context of trial. If a party seeks to introduce such testimony at trial, it should raise the issue at trial outside of the hearing of the jury prior to introducing it, at which time the court will make a ruling on its relevance and admissibility. Depending upon the court's ruling, the report, if sent in to the jury room, shall be redacted accordingly.

Finally, because plaintiff's Title IX retaliation claim has been dismissed, all testimony related to that claim is excluded as irrelevant.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that the **Motion to Exclude the Testimony of Plaintiff's Vocational Rehabilitation Expert, Nancy Favaloro** (Rec. Doc. 127), filed by Isidore Newman School ("Newman") is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion to Exclude the Testimony of Plaintiff's Economic Expert, John Theriot of Malcolm Dienes, L.L.C.** (Rec. Doc. 128) filed by Newman is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion to Exclude or Limit the Testimony of Plaintiff's Psychiatric Expert, Dr. Eileen Ryan** (Rec. Doc. 129) filed by Newman is **GRANTED in part**, and all impermissible factual findings, all references to RC's mental health and well-being, all superfluous references to the McCoy family's mental health and well-being, and medical conclusions made without a reasonable degree of medical certainty, are excluded;

**IT IS FURTHER ORDERED** that the **Motion to Exclude or Limit the Testimony of Dr. Ralph Litolff** (Rec. Doc. 131), filed by Mary Claire McCoy is **GRANTED in part**, and statements of law by Dr. Litolff are excluded;

**IT IS FURTHER ORDERED** that the **Motion to Exclude the Testimony of Plaintiff's Title IX Expert, Ms. Courtney Bullard** (Rec. Doc. 139) is **GRANTED in part**, and impermissible factual determinations and legal conclusions, and references to Title IX retaliation, are excluded.

New Orleans, Louisiana, this  28th  day of September, 2022.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**